UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN MARRERO,<br><br>            Plaintiff,<br><br>     vs.<br><br>VAN A. ROSE, et al.,<br><br>            Defendants. | 1:10-cv-00509-LJO-GSA-PC<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>(1) FILE A THIRD AMENDED COMPLAINT, OR<br><br>(2) NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT<br><br>THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED |

**I.     BACKGROUND**

Edwin Marrero ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to Bivens v. Six Unknown Agents, 42 U.S. 388 (1971). This action was initiated by civil Complaint filed on March 22, 2010, by three Plaintiffs. (Doc. 1.) On July 26, 2010, an order was entered, severing this action and directing that this action proceed as to Plaintiff Marrero only. (Doc. 13.) The other Plaintiffs were dismissed from this action. (Id.) Therefore, any reference to Plaintiff in this action indicates Edwin Marrero as the sole Plaintiff.

The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and entered an order on December 8, 2011, dismissing the Complaint based on Plaintiff's failure to state a claim,

with leave to amend. (Doc. 28.) On March 12, 2012, Plaintiff filed the First Amended Complaint. (Doc. 34.) On June 29, 2012, the court dismissed the First Amended Complaint under Local Rule 220, with leave to amend. (Doc. 36.) On October 29, 2012, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (Doc. 45.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id., at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## III. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at the United States Penitentiary (USP)-Hazelton in Bruceton Mills, West Virginia. The events at issue in the Second Amended Complaint

occurred at USP-Hazelton and at USP-Atwater, in Atwater, California, when Plaintiff was incarcerated there. Plaintiff names twenty-four defendants, who are all employees of the federal Bureau of Prisons (BOP). Plaintiff's factual allegations follow.

On or about May 26, 2006, Plaintiff arrived at USP-Atwater and was released into the General Population. In July 2007, unique steel rods mysteriously began to disappear from the food tray machine. Defendants Zaragoza, Smith, Gant, Garge, Cobb, Cortez, George, and others came to the kitchen and examined the food tray machine, observed that a huge number of steel rods were missing, and did nothing except continue to replace the steel rods. The steel rods, of various thicknesses and lengths, were made of a unique steel that does not set off the metal detectors at USP-Atwater. The General Population became flooded with hundreds of these steel rods, which were converted into home-made knives. It seemed as if every inmate had one of these knives, and those who didn't were forced to obtain one for self-defense. This created a stressful and dangerous environment in the General Population, and Plaintiff was panic-stricken, paranoid, and unable to sleep or focus properly. All of the named defendants had constructive knowledge of the substantial risk of serious harm and were deliberately indifferent.

On March 4, 2008, while Plaintiff was seated at a table at USP-Atwater, someone came behind him and started hitting him with a combination lock attached to a belt. Plaintiff suffered serious and life-threatening injuries to his head, face, back, arms, and hand, and he required forty-to-fifty staples in his head. As a result of the assault, Plaintiff suffers constant pain, headaches, annoyance, trouble focusing, scars, and pain in his mouth. The prison commissary sells the combination locks over the counter to inmates, to use on their lockers. When Plaintiff sees the combination locks, he becomes panic-stricken and paranoid.

When Plaintiff was in the hospital at USP-Atwater being stapled up, defendant Zaragoza called Plaintiff on the phone and told him that he (Zaragoza) had been informed that afternoon that Plaintiff was going to be assaulted, but he just neglected to act on the tip, and he wanted to apologize. Thus, defendant Zaragoza could have prevented the assault.

///

Defendants Zaragoza, Smith, Gant, Garge, Logthrop, Cobb, Turner, Se Se, Scott, DeVere, Lyons, Saechao, Long, Urbano, Franco, Mettry, Loranze, Lohr, Driver, Squires, Nichols, Cross, Lappin, and others had knowledge before Plaintiff was assaulted that prisoners were constantly assaulting other prisoners with these prison-sold combination locks, but they made no effort to stop the sale of these weapons. The wardens, including defendants Smith, Driver, Cross, and many others do not care about the assaults, because prison staff members are not the "human beings" being assaulted. (Second Amended Complaint (2ACP), Doc. 45 at 12 ¶8.)

At the time Plaintiff was assaulted, defendant D. Smith was the warden at USP-Atwater, and defendant Harley G. Lappin was the BOP Director. They both knew that thousands of prisoners have been assaulted by other prisoners with combination locks, but they did not use their authority to remove the locks from the commissary nor from the inmate population.

Defendants Turner, Se Se, Scott, DeVere, Lyons, Saechao, Long, and others have personally assisted at numerous assault scenes where combination locks or unique steel rods were being used by prisoners. However, they did not make any effort to speak against the continued sales of the locks, or to shake down inmates to locate the steel rods.

Defendants Lohr (USP-Hazelton) and Loranze (USP-Atwater) had complete knowledge, even before Plaintiff was assaulted, that combination locks were being used by prisoners to assault other prisoners, but they were deliberately indifferent to Plaintiff's injuries.

Defendants Urbano, Franco, and Mettry are all doctors at USP-Atwater who have provided health services to prisoners who were seriously assaulted by combination locks. The prisoners assaulted with the locks have the same types of injuries, often requiring staples, and may have confided in these doctors about the cause of the injuries. Despite having this knowledge, these doctors just continue to treat large numbers of prisoners assaulted by combination locks, without making any effort to speak out to BOP administrators or their medical union about the continued sales of combination locks.

Defendants Zaragoza, Cobb, and other USP-Atwater staff are part of an investigative team with direct knowledge of serious incidents involving prisoner assaults, murder, and rape,

4

because they gather evidence and talk to witnesses. They have knowledge of assaults with combination locks, even before March 4, 2008 when Plaintiff was injured, and they have seen the bloody injuries. However, they did not do anything to stop the sale of the combination locks.

Defendants Turner, Se Se, DeVere, Long, and Saechao both openly told prisoners that they knew of certain dangers that could have been stopped, but authorities ignored advance notice of danger to prisoners' safety.

Defendant Cross was the former warden at USP-Hazelton who was replaced by defendant Driver. Defendant Nichols was a unit counselor, and defendant Squires was an officer at USP-Hazelton when Plaintiff arrived there about August 5, 2008. Plaintiff immediately complained to these four defendants about the dangerous sales of combination locks. Defendants Nichols and Squires were already named as defendants in another prisoner's civil suit concerning the prisoner's assault with a combination lock at USP-Hazelton. These four defendants ignored Plaintiff's constant complaints and did nothing to stop the sales of combination locks at federal penitentiaries. From September 14, 2012, to October 14, 2012, about fifteen federal prisoners at USP-Hazelton were assaulted by combination locks sold over the counter at the prison.

Plaintiff requests monetary damages and injunctive relief to stop the sale of combination locks from all "Maximum Federal Penitentiaries" and find a safer solution for prisoners to store their items in lockers.

### IV.   PLAINTIFF'S CLAIMS

A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695 (2006). "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Stum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991.) The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, (9th Cir. 2003). "To state a claim for relief under

Bivens, a plaintiff must allege that a federal officer deprived him of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see Schearz, 234 F.3d at 432. A Bivens claim is only available against officers in their individual capacities, Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996), and Plaintiff must allege facts linking each named defendant to the violation of his rights, Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing, 588 F.3d at 1235; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under Bivens." O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir.1988). The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678-78; Moss, 572 F.3d at 969.

### A.   Failure to Protect – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005), and the failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff, e.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

The Eighth Amendment protects against future harm to inmates. Helling v. McKinney, 509 U.S. 25, 33-34; 113 S.Ct. 2475, 2480-81 (1993). The Eighth Amendment requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." Id. at 34 (quoting DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200, 109 S.Ct. 998, 1005 (1989)). "It is 'cruel and unusual punishment to hold convicted criminals in

unsafe conditions.'" Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458 (1982)). A remedy for unsafe conditions need not await a tragic event, and a prisoner need not wait until he is actually assaulted before obtaining relief. See Helling, 509 U.S. at 33-34.

To state a claim for failure to protect under the Eighth Amendment, a plaintiff must allege that (1) prison conditions posed a substantial risk of harm; and (2) defendant was deliberately indifferent to the risk. Id., 509 U.S. at 35; Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, (1976). A prison official can be held liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 844.

**Discussion**

Plaintiff states a cognizable claim against defendant Zaragoza for failure to protect him from assault by another inmate on March 4, 2008 at USP-Atwater.

With respect to conditions at USP-Atwater, Plaintiff's allegations that he and thousands of other prisoners have been assaulted by other prisoners with prison-sold combination locks demonstrates that a sufficiently serious risk of harm existed. However, except for defendant Zaragoza, Plaintiff has not alleged facts showing that any of the named defendants knew of a substantial risk to Plaintiff and were deliberately indifferent to it. It is not enough to allege that a defendant knew, or had constructive knowledge that serious assaults using combination locks had occurred, and failed to step forward to stop the sales of combination locks at the prison. To state a claim, Plaintiff must allege facts demonstrating that the defendant was aware of a substantial risk of serious harm to Plaintiff, and failed to act reasonably. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe,

1 Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[E]ven gross negligence is insufficient to
2 establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334
3 (9th Cir. 1990)).

4     Plaintiff may be able to state a claim against the warden of USP-Atwater, BOP director,
5 or other supervisor for promulgation or implementation of a policy. While liability may not be
6 imposed on supervisory personnel under the theory of respondeat superior, each defendant is
7 liable for his or her own misconduct. Iqbal, 556 U.S. at 679; Ewing v. City of Stockton, 588
8 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated
9 in or directed the violations, or knew of the violations and failed to act to prevent them."
10 Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191, 1197
11 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark
12 County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126
13 F.3d 1189, 1204 (9th Cir. 1997). A defendant may be held liable for promulgating or
14 "implement[ing] a policy so deficient that the policy 'itself is a repudiation of constitutional
15 rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d
16 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor, 880 F.2d at 1045. However,
17 Plaintiff has not alleged facts in the Second Amended Complaint indicating that such a policy
18 exists, or that any of the defendants acted to promulgate or implement it.

19     With respect to Plaintiff's claim that defendants failed to protect him against steel rods,
20 Plaintiff has not sufficiently alleged that the defendants knew that the General Population was
21 flooded with hundreds of steel rods which had been converted into home-made knives.
22 Alleging that the defendants had "constructive knowledge" and were "deliberately indifferent"
23 is not enough. (Doc. 45 at 9 ¶4.) Plaintiff alleges that the presence of these weapons caused a
24 stressful and dangerous environment, causing him to be panic-stricken, paranoid, and unable to
25 sleep or focus properly, but he does not allege any specific threat, or indicate that his risk of
26 assault with the steel rods was more than speculative. The possibility of harm is not equivalent
27 to a substantial risk of harm. Further, Plaintiff has not alleged facts showing that the named
28 defendants acted with deliberate indifference.

### B.     USP-Hazelton - Venue

Venue is improper in this district for Plaintiff's claims arising at USP-Hazelton. The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). In this case, the employees at USP-Hazelton named as defendants in the Second Amended Complaint do not reside in this district. The claims against them arose at USP-Hazelton in Bruceton Mills, West Virginia, which is in the Northern District of West Virginia. Therefore, Plaintiff's claims arising at USP-Hazelton are properly brought in the United States District Court for the Northern District of West Virginia, and those claims must be dismissed from this action for improper venue.

### C.     Negligence -- Federal Tort Claims Act

Plaintiff brings claims for negligence against defendants. Plaintiff is informed that violation of state tort law, such as negligence, is not sufficient to state a claim for relief under Bivens. However, such claims may be brought under the Federal Tort Claims Act (FTCA). The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 114 S.Ct. 996, 1000 (1994). The FTCA provides that district courts have exclusive jurisdiction of civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b).

A claim under the FTCA is barred unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." United States v. Kubrick, 444 U.S. 111, 113 (1979) (quoting 28 U.S.C. § 2401(b)). The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be

affirmatively alleged in the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir.1980) (citing 28 U.S.C. § 2675). A claim may not be filed in federal court until the plaintiff has received a final denial of the claim from the appropriate agency. Id. "A district court may dismiss a complaint for failure to allege this jurisdictional prerequisite. However, the pleader should be given an opportunity to file an amended complaint to attempt to cure such pleading defects." Id.

Plaintiff fails to allege in the Second Amended Complaint that he exhausted his remedies as required by 28 U.S.C. § 2675, by filing a timely administrative tort claim to a federal agency. Id. ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be affirmatively alleged in the complaint.") (internal citation omitted). Therefore, Plaintiff fails to state a claim under the FTCA.

### D. Injunctive Relief

In addition to monetary damages, Plaintiff requests injunctive relief to stop the sale of combination locks from all "Maximum Federal Penitentiaries" and find a safer solution for prisoners to store their items in lockers. (2ACP at 3 ¶V.) Plaintiff is advised that any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

18 U.S.C. § 3626(a)(1)(A). Moreover, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). The events at issue in this action allegedly occurred at USP-Atwater, and Plaintiff is no longer housed there. Based on the

///

nature of the claims at issue in this action, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

## V.      CONCLUSION AND ORDER

The Court finds that Plaintiff's Second Amended Complaint states a cognizable claim against defendant Zaragoza for failing to protect Plaintiff in violation of the Eighth Amendment.  However, Plaintiff fails to state any other claims upon which relief can be granted under Bivens against any of the defendants.  Plaintiff shall be required to either file a Third Amended Complaint, or notify the Court of his willingness to proceed only on the failure to protect claim against defendant Zaragoza.  Should Plaintiff choose to proceed only against defendant Zaragoza, the Court will begin the process to initiate service upon defendant Zaragoza by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above, should he wish to do so.  Plaintiff is granted leave to file a Third Amended Complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Third Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at  678; Jones, 297 F.3d at 934.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at  677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).   As discussed above, Plaintiff must omit from the Third Amended Complaint his claims arising from events occurring at USP-Hazelton, as venue is improper in this district.

Twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims.  Accordingly, Plaintiff 's Third Amended

Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.

With respect to exhibits, Plaintiff is advised that while they are permissible, they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  The Court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence.  If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence. Plaintiff is cautioned that it is not the duty of the Court to look through all of his exhibits to determine whether or not he has claims cognizable under section 1983.  Rather, the Court looks to the factual allegations contained in Plaintiff's complaint to determine whether or not Plaintiff has stated a cognizable claim for relief under section 1983.

Plaintiff is cautioned that he may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  In addition, Plaintiff should take care to include only those claims that have been administratively exhausted.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. Aug., 29, 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (1) File a Third Amended Complaint curing the deficiencies identified in this order, or

    (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the failure to protect claim against defendant Zaragoza;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:10-cv-00509-LJO-GSA-PC;

4. Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so may result in an order striking the amended complaint;

5. The Third Amended Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation; and

6. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **June 14, 2013**                              **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE